# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PAMELA ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:07CV336 |
| | ) |
| THE HONORABLE PETE GEREN, | ) |
| Secretary, Department of the Army, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

**SHARP, Magistrate Judge**

This matter comes before the Court on the renewed motion for summary judgment filed by Defendant Pete Geren, Secretary of the Army. Plaintiff Pamela Robinson, who proceeds *pro se*, opposes the motion. Earlier in the litigation, the Court denied Defendant's motion to dismiss or for partial summary judgment, but granted leave to Defendant to renew the summary judgment motion after discovery. (Docket No. 25, Order of Jan. 28, 2008.) Discovery between the parties has now been completed.

### Procedural History

Plaintiff Pamela Robinson filed a *pro se* Complaint in this Court on April 27, 2007, alleging discrimination and retaliation arising from her employment at the United States Army Research Office ("ARO") in Durham, North Carolina. This is the second lawsuit

Plaintiff has filed in this Court alleging discrimination and retaliation arising from her ARO employment.[1]

In her Complaint, Plaintiff alleges discrimination and harassment based on race, color, sex and in retaliation for the prior EEOC charge/suit, when (1) she was allegedly harassed and reprimanded for using the office fax machine to fax materials related to her prior EEOC charge; (2) on or around April 2, 2004, Dr. Walter Bach paced back and forth past her workstation and stared at her in a manner that intimidated her; (3) on April 6, 2004, her supervisor, Dr. David Skatrud, allegedly called her at home and told her she would be absent without leave if she did not report to work; (4) on April 12, 2004, Dr. Skatrud allegedly told her that she needed to see a doctor "as if [she] had a mental problem"; (5) on April 29, 2004, her acting supervisor, Dr. David Mann, allegedly called her at home and told her she was not sick and she needed to report to work; (6) on April 28, 2004, she was given a Notice of Special Leave Procedures and Request for Medical Documentation; (7) in May 2004, Dr. Mann and Dr. Skatrud allegedly blamed her for losing a folder and allowed her to be harassed in retaliation for her prior claim, which had resulted in the creation of a new division at the ARO; (8) on June 8, 2004, she received a written reprimand in response to her

---

[1] On June 21, 2007, in 1:05CV355, the District Court adopted this Magistrate Judge's Recommendation and granted Defendant's motion for summary judgment on Plaintiff's claims. The Fourth Circuit affirmed the judgment on November 20, 2007. Plaintiff characterizes the instant suit as a "continuation of a relative complaint, Civil Action No. 1:05CV00355 pending before this court." (Docket No. 1, Complaint ("Compl.") at 2.)

filing a police report about an alleged assault in the workplace; and (9) on February 15, 2005, Dr. Mann allegedly used the word "tar baby" in a staff meeting. (Compl. ¶¶ III (A) (1)-(9) at 3-5.) Prior to filing her Complaint in this action, Plaintiff filed a formal complaint with the EEOC, alleging discrimination and ongoing harassment (hostile work environment) based on race (African American), color (black), sex (female) and in retaliation for prior EEOC activity. (Docket No. 9, Def.'s Mem. of Points and Authorities in Supp. of Mot. to Dismiss, In Part, and for Summ. J., Exs. H-1 and H-7.)

The parties have completed discovery and have fully briefed Defendant's renewed Motion for Summary Judgment. (Docket No. 43.) For reasons set forth below, the Court will grant summary judgment in favor of Defendant on all claims of Plaintiff Robinson's complaint.

## The Summary Judgment Standard of Review

A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. A genuine issue as to such facts exists if the evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating a

forecast of evidence on summary judgment review, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party.

When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *cert. denied,* 481 U.S. 1029 (1987). A mere existence of a scintilla of evidence is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252. Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. *Id*. at 248-49. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

**Statement of Facts**

On summary judgment review, the Court views all factual matters in the light most favorable to the non-moving party, Plaintiff Robinson in this case. The factual summary is drawn in major part from the deposition of Plaintiff taken on August 28, 2008 and her testimony at the EEOC hearing on November 3, 2005.

Plaintiff is an African-American female employed as an Administrative Support Assistant at the U.S. Army Research Laboratory, U.S. Army Research Office, in Research Triangle, North Carolina. She was hired in 1995 and serves in the Engineering Sciences

Directorate. Plaintiff's immediate supervisor during the time period relevant to this action was Dr. David Skatrud, the Director of the Engineering Sciences Directorate. (Docket No. 44, Def.'s Mem. of Points and Authorities in Supp. of Renewed Mot. for Summ. J, Gov't Ex. ("GE") N, Pl.'s Dep. at 18.) Dr. David Mann, Associate Director of the Mechanical and Environmental Sciences, served as Plaintiff's acting supervisor on occasion, and Plaintiff provided administrative support to Dr. Mann's division.

In March 2004, Plaintiff was using the fax machine to fax supporting documentation related to her prior EEO case. Plaintiff asserts that Dr. John Prater, the Associate Director for the Material Sciences Division, leaned against the fax machine, acted like he was going to grab the paper, and said, "I always leave my material in the fax machine." (Docket No. 9, GE E, EEOC Hr'g Test. of Pamela Robinson at 265-71.) Then Prater said, "Don't make me mad." Plaintiff considered this incident "the weirdest thing I [have] ever seen." (*Id.*)

In her prior lawsuit in this court, Plaintiff Robinson alleged that on December 18, 2001, Dr. Walter Bach assaulted her by hitting her on the back while she was sitting at her desk. Dr. Bach admitted to "tapping" Plaintiff on the back in what he characterized as a "collegial" way in an effort to relieve her stress. Dr. Bach apologized to Plaintiff for the incident, and he received a letter or reprimand for his conduct. *See* Docket No. 78, Recommendation at 7, *Robinson v. Harvey*, 1:05CV355 (M.D.N.C. May 9, 2007.) Over two years later, on April 2, 2004, Plaintiff sent an e-mail complaining that Dr. Bach, Associate

Director of the Environmental Sciences Division, stared at her when he walked past her cubicle. (GE E at 233-34.) She stated: "I am frightened because of the way Dr. Bach stared at me as he walked past my cubicle. I'm shaking, cannot focus, and I'm having problems concentrating; therefore, I am departing work sooner than planned." (*Id*.) According to Plaintiff, Dr. Bach was pacing up and down the hall past her cubicle. (Pl.'s Dep. at 43-44.) Plaintiff avers that at one point, Dr. Bach stared at her through the fiberglass panel that formed a window into her cubicle. According to Plaintiff, Dr. Bach did not say anything to her or make any overtly threatening gestures.

Shortly thereafter, Plaintiff informed the agency's security personnel that she did not feel safe in the workplace. (GE E at 235.) Plaintiff met with Scott Petty, the ARO Security Officer, who requested that Plaintiff provide him a written statement about her claims and bring it to him first thing Monday morning. (Docket No. 9, GE F, EEOC Hr'g Test. of Scott Petty at 64-65.) Plaintiff never provided any written documentation to Mr. Petty.

On April 5, 2004, Plaintiff left a voice mail message for Dr. Skatrud indicating that she was not coming to work. Dr. Skatrud telephoned Plaintiff at home and told her that she was absent without leave, and that he needed to know her leave status. (*Id*. at 67-69.) Plaintiff informed him that she was afraid, and Dr. Skatrud told her that she could come in the next morning and he would have a security guard escort her. (Docket No. 9, GE B, Fact Finding Conference Test. of Dr. David D. Skatrud at 92, 101-02.) Dr. Skatrud asked Plaintiff

for written documentation of what was making her feel unsafe. Plaintiff did not provide the written documentation.

Later that day, at 12:55 p.m., Plaintiff called the City of Durham 911 Emergency call line while en route to the Army Research Office ("ARO"). (Pl.'s Dep. at 100.) She reported an assault by an unnamed supervisor. (Docket No. 9, GE H-4, 911 Emergency Call Log dated Apr. 5, 2004.) A Durham Police Officer met Plaintiff in the lobby of the ARO facility. When the officer questioned her about the assault, Plaintiff complained of the alleged assault by Dr. Walter Bach that had occurred more than two years earlier in December 2001. (GE F at 66.) The Police Officer and agency security personnel discussed this matter with Plaintiff in the open lobby area, observed by other agency personnel. (GE E at 239-40.) Plaintiff acknowledges that during this conversation she was "loud" and "hysterical," but, when asked if she would move the discussion into to a private office, she refused to do so. (Pl.'s Dep. at 117-18.) Based upon this incident, Dr. Skatrud issued Plaintiff a letter of reprimand for creating a disruption in the workplace. (Docket No. 9, GE H-5.) Plaintiff acknowledged that the only time she had been "assaulted" was on December 18, 2001. (Docket No. 9, GE A, Fact Finding Conference Test. of Pamela Robinson at 55.)

Plaintiff met with Dr. Skatrud on April 12, 2004, to discuss her safety concerns. Plaintiff alleges in her complaint that he told her that she needed to see a doctor "as if [she] had a mental problem." (Compl. ¶ 4.) Plaintiff admits that Dr. Skatrud did not say she had

a mental problem, but that it did not sound like he was talking about a medical doctor. (GE E at 259-61.)

On April 28, 2004, due to frequent unplanned absences by Plaintiff, Dr. Skatrud issued a Notice of Special Leave Procedures and Request for Medical Documentation to Plaintiff. (Docket No. 9, GE H-3.) The notice informed Plaintiff:

> In the 17 working days since 4 Apr 2004, you have taken sick or annual leave on 13 separate days. You have usually provided a last-minute request for the leave, typically on the same day the leave has been taken. This unplanned and inordinate amount of leave usage has hampered and continues to hamper the ability of the Mechanical Sciences Division to process and execute grant proposals, to be responsive to customers, to handle emergency situations, and to perform the Mechanical Sciences program.

*(Id.* ¶ 3.) The notice directed Plaintiff to request prior approval of sick leave for prearranged medical, dental, or optical appointments. It further provided that, for unexpected illnesses or injuries, she was to notify her supervisor not later than 2 hours after her scheduled start time, and to provide a medical certificate from medical personnel indicating that she was incapacitated from her duties. Plaintiff did not have to provide a medical certificate if she chose to take annual leave. (Pl.'s Dep. at 79-80.) Plaintiff was never denied sick or annual leave, and all of the leave that she took was paid. (Pl.'s Dep. at 80-81.)

On April 29, 2004, Plaintiff left a voice mail message that she was not coming to work that day. (GE E at 256-58.) Her acting supervisor, Dr. Mann, telephoned her at home and informed her that, if she was not ill, she needed to report for work.

On May 24, 2004, Dr. Gary Anderson sent an e-mail to Drs. Skatrud and Mann, in which he identified several proposals assigned to him and stated, "[a]s you can see, ARO has assigned the familiar five digit proposal numbers, but I have yet to see the proposal folders. Can you stir some action on these." (Docket 9, GE H-11.) In response to this e-mail, Dr. Mann forwarded the email to Plaintiff and stated, "[d]o you know the whereabouts of the proposal files that Gary mentions below? I don't see them in my vicinity." (*Id*.) On the basis of these email communications, Plaintiff believed, "[N]ow they're blaming me." (Pl.'s Dep. at 92.)

In February 2005, Plaintiff attended a meeting in which the division was discussing the Mechanical Services programs. In reference to one of a proposed program, Dr. Mann stated: "Once you get your hands on that tar baby you can't let it go." After the meeting, Plaintiff was upset and went to Dr. Mann and told him that he had offended her. (Pl.'s Dep. at 129-31.) Dr. Mann replied that he did not know that the term "tar baby" was racially derogative and told Plaintiff that he would not use the term again.

**Discussion**

A.   <u>The Elements of a Prima Facie Case of Race, Color or Gender Discrimination</u>

To state a prima facie case of race, color or gender discrimination under Title VII, a plaintiff must establish that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job satisfactorily at the time of the adverse employment action; and (4) that similarly-situated employees outside her protected

class received more favorable treatment. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973); *White v. BFI Waste Services, LLC*, 375 F.3d 288 (4th Cir. 2004).

An "adverse employment action" is one which affects the terms, conditions, or benefits of employment. *Munday v. Waste Mgmt. of N. Am. Inc.*, 126 F.3d 239, 243 (4th Cir.1997). Conduct that is less than an "ultimate employment decision–to hire, discharge, refuse to promote, etc.–can constitute the necessary adverse employment action [under Title VII]." *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001).

On review of the summary judgment record, the Court finds and concludes that the employment actions at issue in this case were not materially adverse as required by Title VII because they did not render a change in Plaintiff's employment status. Plaintiff was placed on special leave procedures following a period of time in which she took 13 days of leave during the preceding 17 working days. (GE H-3.) However, she was never denied the right to take leave, or denied the leave that she requested. Plaintiff was required to follow appropriate procedures when taking leave, to include notifying her supervisor and providing a medical certificate for use of sick leave. Plaintiff was never denied either sick leave or annual leave, and all of her leave was paid by the agency. The notice of special leave procedures did not alter Plaintiff's employment status in a material way and, therefore, does not constitute an adverse employment action.

The letter of reprimand Plaintiff received for causing a disturbance in the workplace also is not a cognizable adverse employment action. A letter of reprimand will not constitute

an adverse employment action unless a plaintiff can show that the letter adversely affected a term, condition, or benefit of employment or was an intermediate step to discharge. *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 423 (D. Md. 2006), *aff'd*, 266 Fed. Appx. 274, (4th Cir. 2008). Plaintiff has not been discharged, and she acknowledges that she did not lose pay as a result of the letter of reprimand, nor did she lose any benefits as a result of it. Indeed, the record shows that Plaintiff received a rating of commendable and a bonus of $1,075.00 for the rating period October 1, 2003 to September 30, 2004. (GE H-6.)

In sum, the Court finds that Plaintiff cannot establish that she suffered an adverse employment action that affected the terms, conditions or benefits of her employment. Accordingly, her prima facie claim of disparate treatment discrimination fails.[2]

---

[2] Plaintiff's prima facie case would fail on the alternative ground that she has not presented evidence that would cause a reasonable juror to find that she was treated less favorably than a person outside her protected group. Without citation to any evidence of record, Plaintiff states in her summary judgment response that "Rob Dunham and Kimberly Shelton created a hostile working condition and Peggy Gravite is allowed to take excessive leave and a white male was allowed to come to work and not perform his duties at all and it was allowed." (Docket No. 46 at 6.) Rob Dunham was an employee not in Plaintiff's Directorate, Defendant proffers, and in any event, Plaintiff has shown no admissible evidence concerning the discipline, or lack thereof, applied in Dunham's situation. In briefing, Plaintiff cites "white male employee, William Cheeks," as being more favorably treated, but she does not identify either what workplace misconduct she believes Cheeks was guilty of, or what discipline he may have received. Plaintiff mentions other "comparators" but she points to no admissible evidence either of their alleged misconduct or the discipline they did, or did not, receive.

B.   The Elements of a Claim of Retaliation

To state a prima facie claim of retaliation, the plaintiff must show that: (1) she engaged in protected activity; (2) the employer took action that would be materially adverse to a reasonable employee or job applicant; and (3) there is a causal connection between the protected activity and the asserted adverse action. *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S. Ct. 2405, 2408 (2006). On review, the Court concludes that Plaintiff has no evidence of a causal link between her protected activity and the asserted adverse employment actions.

Plaintiff has no direct evidence of a causal link. Moreover, the extended period of time between her protected activities and the allegedly retaliatory acts of her supervisors suggests no causality at all. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."). See also *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."). A lengthy time lapse is present in this case. Plaintiff's first EEO complaint was filed on May 14, 2002, and the events complained of in this case occurred nearly two years later. Plaintiff had not yet initiated her first lawsuit, which was filed on April 25, 2005. *Robinson v. Harvey*, 1:05CV355 (M.D.N.C. May 9, 2007). No reasonable fact-finder could conclude that there was a causal link between the events. To satisfy the causality prong, "the employer must have taken the . . . employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty*

*in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) . In this case, there is no evidence of such as causality beyond, at most, Plaintiff's subjective speculation.[3]

The Court will grant summary judgment to Defendant on Plaintiff's retaliation claim.

C.   Defendant's Legitimate Non-Discriminatory Reasons for Its Actions

Even assuming arguendo that Plaintiff could establish a prima facie case of discrimination or retaliation, Defendant has provided legitimate, non-discriminatory reasons for its actions. Plaintiff has not raised a triable issue that such reasons are pretext for unlawful discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. To avoid summary judgment, Plaintiff must identify specific facts or present some objective evidence that would enable the a jury to find that the articulated reasons for defendant's actions are a sham intended to cover up unlawful discrimination. *Goldberg v. B. Green & Co.,* 836 F.2d 845, 848 (4th Cir.1988).

The evidence does not support Plaintiff's claim that she was placed on special leave procedures as a result of discrimination or retaliation. The special leave procedures were a reasonable response to Plaintiff's extensive and clearly unusual use of leave in April 2004 during the time-period of her 911 emergency call. Likewise, the evidence shows that Plaintiff's reprimand was based upon her disruptive actions in calling 911 and bringing

---

[3] Plaintiff seems to attribute her supervisor's actions to a split in the Mechanical and Environmental Sciences Division that Plaintiff believed she caused. (Pl.'s Dep. at 74.) Other evidence suggests that the departments were divided due to growth. *See Robinson v. Harvey*, 1:05CV355 (M.D.N.C. May 9, 2007), Docket No. 59, Ex. E.

police to the lobby of the ARO for an event that occurred over two years before. Even Plaintiff acknowledges that she was "loud" and "hysterical" in the lobby, that many other employees were passing through the area, and that she refused to move the conversation to a private office despite a request for her to do so. Plaintiff's bizarre actions in this incident completely undercut any speculation on her part that her supervisors acted on the basis of discriminatory animus or retaliatory purpose. Her behavior, in calling in a 911 emergency under the circumstances before her, was simply outrageous and unacceptable, and called for an appropriate employment sanction. Accordingly, Defendant is entitled to summary judgment on the additional ground that the evidence shows that Plaintiff's supervisors disciplined her for legitimate non-discriminatory reasons.

D.   The Elements of a Hostile Work Environment Claim

Plaintiff claims that she was subjected to a hostile work environment. To prove a prima facie hostile work environment claim, a plaintiff must demonstrate that the harassment was: (1) unwelcome; (2) based on race, color, gender or retaliation; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Baqir v. Principi,* 434 F.3d 733, 745-46 (4th Cir.), *cert. denied*, 549 U.S. 1051 (2006). Review of the complaint shows that even if all her allegations were accepted as true, she could not make out a case of hostile environment. The Statement of Facts in this opinion sets out evidence that falls woefully short of supporting a hostile environment claim. Plaintiff's evidence raises no triable issues

of either "severe" conditions or of "pervasive" conditions that could be said to "alter the conditions of employment and create an abusive atmosphere."

Plaintiff claims she was harassed when Dr. Prater stated "Don't make me mad;" Dr. Bach paced past her workstation and stared at her; Dr. Skatrud and Dr. Mann called her at home when she was absent to determine what type of leave she was taking; Dr. Skatrud said she should see a doctor if she had problem; she was asked about some misplaced folders; and Dr. Mann made a reference to a "tar baby" under circumstances wherein he was describing a program which he believed would create a sticky situation from which it would be difficult to escape. The reference may well be inappropriate in the workplace, but it was isolated and not repeated, and it clearly represents a reference to a famous and well-known children's story.

To determine if a work environment is hostile or abusive, a court must take into consideration the totality of the circumstances. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241-42 (4th Cir. 2000). These circumstances include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id*. The conduct complained of by Plaintiff in this action would not meet a single part of this test, let alone all four parts considered together. Plaintiff's subjective belief that she was harassed by her supervisors and others is not a

substitute for admissible evidence that raises and issue of hostile environment.[4] Summary judgment will be granted on Plaintiff's hostile work environment claim.

**Conclusion**

For reasons set forth above, **IT IS ORDERED** that Defendant's motion for summary judgment (Docket No. 43) is **GRANTED** and that this action be dismissed in its entirety. In view of this disposition, Defendant's motion to strike (Docket No. 52) is **DENIED**. Additionally, Plaintiff's motion for discovery sanctions (Docket No. 39) is **DENIED** as without merit.

---

[4] Plaintiff's understanding of "harassment" is called into question by her argument to this Court. In her "objection" to Defendant's summary judgment motion, Plaintiff wrote: "Plaintiff was harassed during [her] deposition by the U.S. Attorney Office when the agency's attorney demanded plaintiff to reveal who [she] reported [her] claims to and demanded plaintiff to [] tell her what was told to Blue Cross and Blue Shields." (Docket No. 46 at 1.) During her deposition, however, Plaintiff thanked the U.S. Attorney and the attorney for the Secretary of the Army for *not* harassing her, saying:

> And I – and I'm grateful – I was afraid to come here thinking – okay – I'm going to be harassed when I get here, and I – and I'm grateful that I'm not being harassed. I'm just – I'm going to be honest with you. I'm just grateful and thankful. I hate going to – because I know I'm going to be harassed when I go through it.
> . . . .
> And I thank you that you – I thank God I'm not being harassed right now. I'm just – I am thankful because I'm always uptight because I think, oh, I have to suffer harassment, but I thank God that you are not harassing me, and I appreciate it.

(Pl.'s Dep. at 64-65.)

A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

                                         /s/ P. Trevor Sharp
                                    United States Magistrate Judge

Date: April 30, 2009